SWAFFORD ET AL., APPELLANTS, *v.* NORWOOD BOARD OF EDUCATION ET AL., APPELLEES.

(No. C-830118—Decided March 7, 1984.)

*Ms. Sandra Mendel,* for appellants.

*Messrs. Hartsock, Harris & Schneider* and *Mr. Paul R. Berninger,* for appellees Norwood Board of Education, Norwood City School District and David A. Query.

*Mr. Robert G. Kelly,* for appellee Norwood Civil Service Commission.

PALMER, P.J. The appellants are all former non-teaching employees of the appellee, Norwood Board of Education (hereinafter "board"), who were laid off as of June 30, 1981. Timely appeals to the Norwood Civil Service Commission (hereinafter "NCSC") were filed by all such appellants. After various preliminary matters, the NCSC scheduled and heard the matter on January 27, 1982, announcing orally a decision favorable to appellees at the conclusion of the hearing. This determination was not, however, entered into the minutes of the NCSC until April 28, 1982. The appellants first received a copy of these minutes, under circumstances hereinafter detailed, on September 29, 1982. An appeal was then filed by appellants with the Hamilton County Common Pleas Court pursuant to R.C. Chapter 2506 on October 5, 1982, and, in due course, the transcript of proceedings before the NCSC was certified to the court. Appellee board, meanwhile, filed a motion to dismiss the appeal predicated on three grounds: that the appeal was untimely, that the matter was not appealable under R.C. Chapter 2506, and that the appellants were guilty of laches. This motion was supported by a certified copy of the decision of the NCSC denying appellants' appeal, dated April 28, 1982. This motion to dismiss, together with that of the city of Norwood,[1] was opposed by appellants' motion and memoranda *contra.* This motion was buttressed by a variety of affidavits from appellants and their counsel, in which the former asserted that they had not received an evidentiary hearing before the NCSC in January 1982, nor received any notice of the April 1982 decision. In his affidavit, counsel for appellants stated that he had written the NCSC on April 7, 1982, asking for its ruling on the January hearing, and that two additional letters were written, one on August 11, 1982, by the affiant to the law director of the appellee city of Norwood demanding institution of a mandamus action to force a decision by the NCSC on the layoff appeals of appellants, and another, at his direction, to the NCSC. Counsel further stated that not until September 29, 1982, was a response received from NCSC setting forth the decision. Copies of these various letters were attached to the affidavits.

On December 30, 1982, the trial court journalized its entry[2] dismissing the appeal, stating:

"Pursuant to motions filed by the appellees and in consideration of the pleadings [*sic*] and oral argument, it is the determination of this Court that the

---

[1] Appellee city of Norwood's separate motion to dismiss was limited to the question of the timeliness of the appeal.

[2] There appears to have been a written opinion forwarded by the trial court to counsel, attached to the appellee board's brief, which gives the court's reasoning in somewhat greater detail. This opinion does not, however, appear to have been journalized and does not appear in the record certified to us. It forms, therefore, no part of the decision in this case.

appeal is untimely. This action is hereby dismissed."

Appeal to this court followed with two assignments of error presented for review: that the trial court erred in dismissing the appeal on the basis of (1) untimeliness and (2) laches. We agree.

It is clear that the issue in this appeal lies in the meaning to be derived from R.C. 2505.07:

"After the journal entry of a final order, judgment, or decree has been approved by the court in writing and filed with the clerk for journalization, *or after the entry of other matter for review,* the period of time within which the appeal shall be perfected unless otherwise provided by law, is as follows:

"* * *

"(B) All other appeals shall be perfected within ten days." (Emphasis added.)

Appellees argue, in the alternative, that the ten days for appeal began to run when the NCSC announced its decision at the hearing on January 27, 1982, or, at the latest, when the action was entered into its minutes on April 28, 1982, either date exceeding by far the ten-day limitation for the appeal filed on October 5, 1982. The first of these contentions may be readily answered.

As a court speaks only through its journal, *Schenley* v. *Kauth* (1953), 160 Ohio St. 109 [51 O.O. 30], a public board, commission, or other deliberative body speaks through its minutes or its written record of resolutions, directives, and action. Cf. *Grimes* v. *Cleveland* (C.P. 1969), 17 Ohio Misc. 193, 195 [46 O.O.2d 279] ("The form of written entry of a decision of an administrative board should be the written minutes of its meeting at which the decision was rendered."). Until such written record is made and approved, not only are the acts in question subject to all the vagueness and uncertainty that characterize oral pronouncements, but

they lack the degree of finality necessary to form the predicate for further action or challenge. Indeed, that last consideration is clearly exemplified in the present case, where a review of the January 27, 1982 hearing before the NCSC reveals that, notwithstanding the apparent decision of the NCSC, not all matters were necessarily concluded at that hearing, and that with respect to certain contentions of counsel for the appellants (principally, that appellants had not had a merit hearing and that certain subpoenas had not been honored), the chairman of the NCSC responded, "We'll [*i.e.,* the NCSC] check into this." The record is totally silent as to what, if anything, this "check" produced. Moreover, the very language of the statute in question, referring to "the *entry* of other matter for review," R.C. 2505.07, seems conclusively to speak against any merely verbal pronouncements as to the dispositive event from which appeal time begins to run. One does not "enter" speech.

Appellees' second argument, that appellants' appeal time began to run when the action of the board was entered into its minutes on April 28, 1982, is not so readily disposed of. We think it unarguable that in the usual and customary case, the entry of a resolution, order, or directive into the official minute book of a public board or commission and its subsequent approval by such board or commission would constitute "the entry of other matter for review" within the meaning of R.C. 2505.07 and would, without more, commence the running of time for appeal. While obviously the better practice would be to give prompt notice of such action to all interested parties, and, indeed, judicial notice may be taken that this is customarily done in well-conducted agencies, the statute does not require such notice since, doubtless, in the usual and customary case, the information is readily available to anyone

who desires to read it. Cf. *Grimes* v. *Cleveland, supra.*

In the case, thus, of any *court of record,* the journalization of any final order, judgment, or decree indisputably commences the running of time for perfecting an appeal. Since there is no problem discovering such entries from readily available public records by those interested in the outcome of contested matters, no serious problem results by requiring such interested parties to look to their own interests in determining the outcome of proceedings. Similarly, in the case of final orders and adjudications of those boards, commissions, and agencies governed by R.C. 2506.01, there will perhaps seldom arise a problem of access to information necessary to provide a due process fundament to R.C. 2505.07(B). This will be true either because prompt written notice of the action will voluntarily be sent to interested parties, or a copy of the action will be posted or published in a fashion sufficient to give actual or constructive notice to parties, or the record of the action will be as readily available to parties inquiring therefor as would be the journal of a court of record in the clerk's office in the courthouse.

In the instant case, however, there was absolutely no evidence before the court that any of these latter factors were present. Indeed, the record is undisputed that no written or other actual notice of the NCSC's order was received by appellants until September 29, 1982. As to any posting or publication of the order, the record is silent, although counsel for Norwood conceded during oral argument that he knew of no such practice by the NCSC. As to the ready availability to the public of the orders of the NCSC, the record is again silent,[3] although it does not appear to be disputed that the NCSC membership is part time and that its gatherings are relatively infrequent. At the very least, some burden existed on the NCSC, in view of the appellants' above affidavits raising the issue of absence of notice, to adduce evidence in a fashion agreeable to Civ. R. 12(B) and 56(E), as to the *public availability* of the April 28, 1982 action, if it wished to negative the existence of any genuine issue of material fact.

It is apparent from what we have said that the facts in this appeal do *not* present the usual and customary case, and that it would be unconscionable in the instant case to dismiss the appellants from a judicial review of the merits of their case based on no more than appears in this record. In addition to what we have noted immediately above with respect to the apparently casual manner in which the instant commission treats its orders and directives, we emphasize the following additional factors which lead us to our conclusion. First, we note again the indeterminate conclusion of the January 27, 1982, hearing, where the transcript of proceedings confirms that counsel for the appellants was left with the distinct impression that his objections to the hearing procedure would be "checked into" by the NCSC. Without some evidentiary explication of this, one would conclude that it would not have been unreasonable for appellants to have anticipated some further, and perhaps favorable, action by the NCSC on their appeal.

Secondly, and perhaps most importantly, counsel for appellants wrote to the NCSC fully three weeks before the instant order was entered into the minute book pointing out that his procedural questions had not yet been answered nor any decision on them

---

[3] Some reference was made during arguments to the minute book being kept in a secretary's desk. The record does not speak to the point, or to the degree to which access by the public could be had to such records.

made, and asking when a decision would be made.[4] This letter was left unanswered either then, or after the April 28, 1982 entry of the instant order, and was not answered until after two more letters had been sent by appellants' counsel, the first to the law director of the appellee city of Norwood demanding institution of a mandamus action to require the NCSC to act on the appeals, and the second to the NCSC executive secretary requesting a copy of the decision that counsel had "been informed" had been made.

Under these circumstances, where appellants' counsel had every right to believe his appeals to the NCSC were still, at least to some degree, open and unresolved, the failure of the NCSC to respond to the April 7, 1982 letter, either then or directly after the April 28, 1982 entry of the order into the minutes, in effect slammed the public door on appellants' access to information. With nothing more than the record reveals to us,[5] it would be unreasonable to expect appellants to have done more on their own behalf than they did. The law will not require them, at their peril, to storm closed doors in order to discover official actions. Appellants acted on their appeal within ten days after the order was finally revealed to them. We hold that, under the peculiar circumstances of this case, R.C 2505.07(B) required no more of them.

The assignments of error are well taken and granted. The judgment of the court of common pleas is reversed, and the matter is remanded to that court for further proceedings according to law.

*Judgment reversed and cause remanded.*

KEEFE and BLACK, JJ., concur.

---

[4] The body of this letter, under date of April 7, 1982, is as follows:

"Dear Mr. Fitzpatrick:

"The Norwood Board of Education layoff cases have been pending before the Commission since May, 1981. These cases have still not been heard or a decision made by the Commission on the procedural questions raised. Such a long delay is intolerable. Please advise when we may expect a decision by the Commission on these pending matters.

"Thank you for your attention to this matter.

"Very truly yours,
Ronald H. Janetzke
Attorney at Law"

[5] The material parts of the record consist of the transcript filed pursuant to R.C. 2506.02, supplemented by certain matters omitted therefrom, and by the affidavits supporting the memoranda previously referred to. Because of the preliminary stage at which the matter was arrested, *cf. In re Appeal of Sun Oil Co.* (C.P. 1964), 95 Ohio Law Abs. 86, we do not know if appellants propose to further supplement the record as permitted by R.C. 2506.03. Such supplementation, had matters progressed to that stage, might conceivably have borne more proximately upon such issues as the availability of the NCSC's decisions to the public and to interested parties, matters about which we are presently left to conjecture.